ACCEPTED
06-14-00172-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
5/6/2015 11:03:02 AM
DEBBIE AUTREY
CLERK

**ORAL ARGUMENT WAIVED**

CAUSE NO. 06-14-00172-CR

IN THE

COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS AT TEXARKANA

_____

GERALD MAC LOWREY, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

ON APPEAL FROM THE 6TH JUDICIAL DISTRICT COURT
LAMAR COUNTY, TEXAS
TRIAL COURT NO. 25492; HONORABLE WILL BIARD, JUDGE

_____

# APPELLEE'S (STATE'S) BRIEF

_____

Gary D. Young, County and District Attorney
Lamar County and District Attorney's Office
Lamar County Courthouse
119 North Main
Paris, Texas   75460
(903) 737-2470
(903) 737-2455 (fax)

**ATTORNEYS FOR THE STATE OF TEXAS**

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

5/6/2015 11:03:02 AM

DEBBIE AUTREY
Clerk

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.2(a)(1)(A), the list of parties and counsel is not required to supplement or correct the appellant's list.

# TABLE OF CONTENTS

**PAGE NO.:**

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . .     i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . .     ii

INDEX OF AUTHORITIES   . . . . . . . . . . . . . . . . . . . . . . . .     iv

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . .     vii

STATEMENT REGARDING ORAL ARGUMENT  . . . . . . .     viii

ISSUE PRESENTED IN REPLY. . . . . . . . . . . . . . . . . . . . .     ix

INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . .     2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . .     13

ARGUMENT AND AUTHORITIES

    **ISSUE/POINT OF ERROR PRESENTED IN REPLY
NO. 1:   THE TRIAL COURT DID NOT ABUSE ITS
DISCRETION IN DENYING THE WRIT OF
ATTACHMENT.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     14

    **ISSUE/POINT OF ERROR PRESENTED IN REPLY
NO. 2:   THE TRIAL COURT DID NOT ABUSE ITS
DISCRETION IN DENYING THE MOTION FOR
CONTINUANCE.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     20

**PAGE NO:**

**ISSUE/POINT OF ERROR PRESENTED IN REPLY NO. 3:   THE EVIDENCE WAS LEGALLY-SUFFICIENT FOR THE JURY, AS A RATIONAL FACT FINDER, TO FIND THAT "JOE TEX EXPRESS" WAS THE SPECIFIC OWNER OF THE PROPERTY.** . . . . . . . . . . . . . . . .   22

**ISSUE/POINT OF ERROR PRESENTED IN REPLY NO. 4:   THE ALLEGED VARIANCE, IF ANY, (BETWEEN THE NAME OF THE SPECIFIC OWNER ALLEGED AND THE NAME PROVED) WAS IMMATERIAL, AND NOT FATAL.** . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   31

CERTIFICATE OF COMPLIANCE   . . . . . . . . . . . . . . . . . . .   32

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . .   32

# INDEX OF AUTHORITIES

**CASES:**                                                   **PAGE NO:**

*Boyette v. State*, 632 S.W.3d 915, 916, 917 (Tex. App.--Houston [14th Dist.] 1982, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . 28, 29, 30

*Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Byrd v. State*, 336 S.W.3d 242, 251, n. 48, 252, 253 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 26, 28

*Cada v. State*, 334 S.W.3d 766, 776 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Clark v. State*, 305 S.W.3d 351, 355 (Tex. App.--Houston [14th Dist.] 2010) *aff'd*, 365 S.W.3d 333 (Tex. Crim. App. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,18

*Coleman v. State*, 966 S.W.2d 525, 527-28 (Tex. Crim. App. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Castillo v. State*, 901 S.W.2d 550, 553 (Tex. App.--El Paso 1995, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18

*Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Driggers v. State*, 155 Tex. Crim. 475, 477, 236 S.W.2d 497, 498 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

*Emenhiser v. State*, 196 S.W.3d 915, 921 (Tex. App.--Fort Worth 2006, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 18

**CASES:** **PAGE NO:**

*Freeman v. State*, 707 S.W.2d 597, 602-03 (Tex. Crim.
App. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Geick v. State*, 349 S.W.3d 542, 545 (Tex. Crim.
App. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Gentry v. State*, 770 S.W.2d 780, 786, 787 (Tex. Crim. App.
1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

*Gollihar v. State*, 46 S.W.3d 243, 256 (Tex. Crim.
App. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Hardin v. State*, 471 S.W.2d 60, 62 (Tex. Crim. App.
1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18

*Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App.
2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Jackson v. Virginia*, 443 U.S. 307, 318, 319, 99 S.Ct. 2781,
61 L.Ed.2d 560 (1979) . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Middleton v. State*, 476 S.W.2d 14, 16 (Tex. Crim.
App. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Rodriguez v. State*, 90 S.W.3d 340, 358 (Tex. App.--El Paso
2001, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18, 19

*Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646,
98 L.Ed.2d 798 (1988) . . . . . . . . . . . . . . . . . . . . . . . . 18

*Taylor v. State*, 440 S.W.3d 854, 856 (Tex. App.--Texarkana
2013), *aff'd*, 450 S.W.3d 528 (Tex. Crim. App.
2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Thomas v. State*, 444 S.W.3d 4, 9 (Tex. Crim.
App. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

**CASES:**                                                    **PAGE NO:**

*Varela v. State*, 561 S.W.2d 186 (Tex. Crim. App. 1978). . .          17

*Vasquez v. State*, 67 S.W.3d 229, 240-41 (Tex. Crim.
    App. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          20


**STATUTES:**                                                 **PAGE NO:**

TEX. CODE CRIM. PROC. ANN. ART. 21.08 . . . . . . . . . . . . .          23

TEX. CODE CRIM. PROC. ANN. ART. 29.06(3)  . . . . . . . . . .          21

TEX. PENAL CODE ANN. § 31.03(e)(4)(A) (West
    Supp. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          vii

TEX. R. APP. P. 38.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          viii

TEX. R. APP. P. 38.2(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . .          i


**CONSTITUTIONS:**                                            **PAGE NO:**

TEX. CONST. ART. 1, § 10 . . . . . . . . . . . . . . . . . . . . . . . . .          15

U.S. CONST. AMEND. VI . . . . . . . . . . . . . . . . . . . . . . . . . .          15

## STATEMENT OF THE CASE

This is a criminal case and an appeal from the trial court's final judgment of conviction for theft.  *See* CR, pgs. 95-96.

In October of 2013, a grand jury in Lamar County returned an original indictment that charged Lowrey with two (2) counts of alleged theft from his former employer, "Joe Tex Express."  *See* CR, pg. 4.  After a jury trial, a jury, by its unanimous verdict, found Lowrey guilty of the offense of theft of Material Aluminum/Copper/Bronze/Brass less than $20,000.00, as charged in count 2 of the indictment.  *See* RR, Vol. 4, pg. 97; 1Supp. CR, pg. 8.  *See also* Tex. Penal Code Ann. § 31.03(e)(4)(A) (West Supp. 2014).

After discharging the jury, the trial judge assessed punishment and sentenced Lowrey to two (2) years confinement in the state jail division but probated that sentence for five (5) years of community supervision.  *See* RR, Vol. 4, pgs. 125-126.  In its final judgment of conviction, the trial court assessed a fine of $1,000.00 (probated) along with court costs of $343.00 and restitution to be determined.  *See* CR, pg. 95.

In a timely fashion, Lowrey filed his notice of appeal.  *See* CR, pg. 94. By this appeal, Lowrey brought four (4) issues/points of error.

## STATEMENT REGARDING ORAL ARGUMENT

The State will waive oral argument.  *See* Tex. R. App. P. 38.2.

## ISSUES PRESENTED IN REPLY

**ISSUE/POINT OF ERROR PRESENTED IN REPLY NO. 1:** THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE WRIT OF ATTACHMENT.

**ISSUE/POINT OF ERROR PRESENTED IN REPLY NO. 2:** THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE MOTION FOR CONTINUANCE.

**ISSUE/POINT OF ERROR PRESENTED IN REPLY NO. 3:** THE EVIDENCE WAS LEGALLY-SUFFICIENT FOR THE JURY, AS A RATIONAL FACT FINDER, TO FIND THAT "JOE TEX EXPRESS" WAS THE SPECIFIC OWNER OF THE PROPERTY.

**ISSUE/POINT OF ERROR PRESENTED IN REPLY NO. 4:** THE ALLEGED VARIANCE, IF ANY, (BETWEEN THE NAME OF THE SPECIFIC OWNER ALLEGED AND THE NAME PROVED) WAS IMMATERIAL, AND NOT FATAL.

CAUSE NO. 06-14-00172-CR

IN THE

COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS AT TEXARKANA
_____

GERALD MAC LOWREY, Appellant

V.

THE STATE OF TEXAS, Appellee
_____

ON APPEAL FROM THE 6TH JUDICIAL DISTRICT COURT;
LAMAR COUNTY, TEXAS;
TRIAL COURT NO. 25492; HONORABLE WILL BIARD, JUDGE
_____

# APPELLEE'S (STATE'S) BRIEF
_____

TO THE HONORABLE SIXTH COURT OF APPEALS:

COMES NOW, the State of Texas, by and through the elected County and District Attorney of Lamar County, Gary D. Young, and the Lamar County and District Attorney's Office, respectfully submits its Appellee's (State's) Brief under Rule 38.2 of the Texas Rules of Appellate Procedure.

Unless otherwise indicated, Gerald Mac Lowrey will be referred to as "the appellant" or "Lowrey" and the State of Texas as "the State."

-1-

## STATEMENT OF FACTS

### Factual Background.

Since 2008, *Joe Tex Xpress*, a Texas company in Mount Vernon, shipped metals machinery, lumber, building materials, railroad materials and "things like that." *See* RR, Vol. 3, pg. 114. According to Angela Dunavant (Dunavant), the chief financial officer (or CFO) since 2006 (RR, Vol. 3, pgs. 112-113, 115), *Joe Tex Xpress* shipped for a manufacturer called "Hussey Copper" (Hussey Copper). *See* RR, Vol. 3, pgs. 114, 179.

Hussey Copper was located in Eminence, Kentucky. *See* RR, Vol. 3, pgs. 99, 166. *Joe Tex Xpress* shipped copper products from Hussey Copper. *See* RR, Vol. 3, pg. 179.

Lowrey was an owner-operator for *Joe Tex Xpress*. *See* RR, Vol. 3, pg. 114. Lowrey was a "contract laborer" (RR, Vol. 3, pg. 150) and subject to an independent contractor agreement. *See* RR, Vol. 3, pg. 153; Defendant's Exhibit 1.

Lowrey started in 2010, and he was terminated in 2013. *See* RR, Vol. 3, pgs. 115, 134-135, 162-164, 193. In 2013, some cargo went missing off of a load that Lowrey was to haul. *See* RR, Vol. 3, pg. 115.

On May 1, 2013, Lowrey hauled a load (boxes of copper bars) from

Hussey Copper in Kentucky to El Paso, Texas. *See* RR, Vol. 3, pgs. 116-117, 127-128. Lowrey was delivering to two different companies in El Paso, Schneider Electric and Eaton Electric. *See* RR, Vol. 3, pgs. 126, 131, 144, 179.

*Joe Tex Xpress* had the responsibility of taking care of the copper. *See* RR, Vol. 3, pg. 117. *See also* State's Exhibit 14 (bill of lading). To the one customer, Schneider Electric, the total weight was 17,089 pounds. *See* RR, Vol. 3, pg. 183. To the other customer, the total weight was 28,321 pounds. *See* RR, Vol. 3, pgs. 183-184. Lowrey wasn't just carrying copper bars that were four-inches wide. *See* RR, Vol. 3, pg. 130. *See also* RR, Vol. 3, pg. 203 (the State "introduced evidence that the load was loaded down with copper bars of varying widths").

On the 1st or 2nd of May, Dunavant got notification from Hussey Copper that the load had been "shorted." *See* RR, Vol. 3, pg. 123. Dunavant got notification for one open box from Schneider Electric. *See* RR, Vol. 3, pgs. 131, 167; State's Exhibit 12. *See also* RR, Vol. 3, pg. 144 ("open pallet, missing material"). Dunavant called Lowrey to discuss it with him. *See* RR, Vol. 3, pgs. 123-124.

**Lowrey Contacted Law Enforcement.**

On May 4, 2013 (RR, Vol. 3, pg. 60), Keith Draper, a patrol deputy with the Lamar County Sheriff's Office (RR, Vol. 3, pgs. 23-24), made contact with Lowrey, who reported that forty-one sticks of flat copper tubing had been stolen. *See* RR, Vol. 3, pgs. 25, 33-34. Deputy Draper was dispatched to an *Exxon* and a diner on Bonham Street, just west of the loop in Paris. *See* RR, Vol. 3, pg. 31. During the interview in the parking lot, Lowrey said that he had borrowed his daughter-in-law's pickup and was going to sell some "scrap." *See* RR, Vol. 3, pgs. 26, 33. But, it was unclear if he sold it or not. *See* RR, Vol. 3, pg. 33.

Deputy Draper "just wrote a report about it and contacted CID" and then contacted Joel Chipman by telephone. *See* RR, Vol. 3, pgs. 27, 43. Lowrey also wrote a statement. *See* RR, Vol. 3, pg. 29. According to policy with the Lamar County Sheriff's Office, the field encounter with the witness was recorded (RR, Vol. 3, pgs. 29-31), but it wasn't placed into evidence to be saved. *See* RR, Vol. 3, pg. 30. *See also* RR, Vol. 3, pgs. 44-45.

**CID Investigation.**

Since 2009, Joel Chipman (Chipman) worked for the Lamar County Sheriff's Office as an investigator in the criminal investigation division. *See*

RR, Vol. 3, pgs. 40-41. Previously, Chipman retired from the Paris Police Department after seventeen (17) years. *See* RR, Vol. 3, pg. 41. In May of 2013, Chipman was a certified peace officer. *See* RR, Vol. 3, pg. 42.

On May 4, 2013, Chipman received a call from Deputy Draper, who said that "he had taken a theft report from Mr. Lowrey." *See* RR, Vol. 3, pg. 43. Chipman had an occasion to meet Lowrey before May of 2013. *See* RR, Vol. 3, pg. 43.

When Chipman started investigating this theft that Lowrey reported, it was reported as "copper bars being about a quarter inch thick, four-inches wide and twelve feet long." *See* RR, Vol. 3, pg. 47. They had a silver colored coating on them that was actually aluminum. *See* RR, Vol. 3, pg. 47. Chipman characterized the description of this copper theft as "distinctive." *See* RR, Vol. 3, pgs. 48-49. *See also* State's Exhibit 2.

On May 15, 2013, Chipman went to Paris Iron and Metal. *See* RR, Vol. 3, pgs. 49-50, 73-74. Paris Iron and Metal was located at Seventh Northwest and Center Street in Paris, Lamar County, Texas. *See* RR, Vol. 3, pgs. 49-50. Chipman asked if they had any copper bars; and as soon as he said that, the person said, "I know exactly what you're talking about." *See* RR, Vol. 3, pg. 50. Chipman believed it was like 12 bars. *See* RR, Vol. 3,

pg. 51. *See also* State's Exhibits 2-7; RR, Vol. 3, pgs. 80-81. At least five bars were the four-inch bars. *See* RR, Vol. 3, pg. 53. The bars looked like "they were kept very well." *See* RR, Vol. 3, pg. 55.

In addition to taking photographs, Chipman got a receipt that was issued to Lowrey on May 1, 2013. *See* RR, Vol. 3, pgs. 56-57. *See also* State's Exhibit 8. Lowrey received $1,896.00 for "790 pounds of number two copper" at $2.40 a pound. *See* RR, Vol. 3, pgs. 56-57. *See also* RR, Vol. 3, pg. 103.

On May 17, 2013, Chipman interviewed Lowrey, when he arrived, left on his own, and was not under arrest. *See* RR, Vol. 3, pgs. 61-62. Chipman "asked him about the scrap." *See* RR, Vol. 3, pg. 63. *See also* RR, Vol. 3, pg. 101. During the interview, Lowrey "had a relative that worked for the phone company and that he gave him old wire and scraps to sell." *See* RR, Vol. 3, pgs. 63, 102. *See also* RR, Vol. 3, pg. 84. "He said about 400 pounds." *See* RR, Vol. 3, pg. 63.

During the May 17th interview, Chipman showed him the receipt. *See* RR, Vol. 3, pg. 64. When asked about the fact that it was 110 pounds light, Lowrey "advised that Chris Woodall had been in the truck when they went across the scales." *See* RR, Vol. 3, pg. 65. *See also* RR, Vol. 3, pgs. 71,

103. "Chris Woodall got out of the truck; and Chris Woodall weighs about 110 pounds." *See* RR, Vol. 3, pg. 65. *See also* RR, Vol. 3, pg. 66.

During the interview, Lowrey became loud "pretty quick." *See* RR, Vol. 3, pg. 67. Voices were raised. *See* RR, Vol. 3, pg. 104. Lowrey was angry and irritated. *See* RR, Vol. 3, pg. 105.

During the interview, Lowrey also volunteered that "he had bought some off another truck driver up in Kentucky or somewhere, that this truck driver had some scraps, some extra bars that he hadn't off loaded yet, but he was going back to the dock with these bars." *See* RR, Vol. 3, pg. 67-68. *See also* RR, Vol. 3, pgs. 71, 85. "He was supposed to have delivered it somewhere." *See* RR, Vol. 3, pg. 68. Lowrey also said that "he paid $200 for seven or eight sticks of it." *See* RR, Vol. 3, pg. 85. *See also* RR, Vol. 3, pgs. 102-103.

Afterwards, Lowrey said they went back to the house and picked up Lacrisha Lowrey (or Lacrisha Woodall), and they went to the casino in Grant, Oklahoma. *See* RR, Vol. 3, pgs. 71-72. Lacrisha is Lowrey's ex daughter-in-law. *See* RR, Vol. 3, pg. 106.

At some point, Chipman made the determination that Lowrey was no longer a victim, but a suspect. *See* RR, Vol. 3, pgs. 89-90. Chipman made

that determination after the interview on May 17, 2013.  *See* RR, Vol. 3, pg. 90.  Lowrey admitted that he defrauded Paris Iron and Metal on how much metal that he was selling.  *See* RR, Vol. 3, pgs. 103, 109.

According to Chipman, it was his understanding that the trucking company was financially responsible for the material, and that they were the victim in the case.  *See* RR, Vol. 3, pg. 95.  The copper was "prepaid" by the owners in El Paso.  *See* RR, Vol. 3., pg. 95.  The seller was Hussey Copper. *See* RR, Vol. 3, pg. 95.

**Indictment and Jury Trial.**

1. **The State's Indictment Charged Lowrey with Theft.**

On October 10, 2013, a grand jury in Lamar County returned an original indictment that charged Lowrey with two (2) felony counts of theft. *See* CR, pg. 4.  The State's original indictment alleged the owner of the property to be "Joe Tex Express."  *See* CR, pg. 4.

2. **The Cause Number Underlying this Appeal Proceeded to a Jury Trial.**

In due course, cause number 25492 proceeded to a jury trial.  On August 4, 2014, the trial court conducted the voir dire proceedings (RR, Vol. 2, pgs. 1, 4), and lawfully impaneled a petit jury.  *See* RR, Vol. 2, pg. 48.

On August 5, 2014, the trial court called the cause number underlying

-8-

this appeal to put "a couple of items we're going to put on the record." *See*

RR, Vol. 3, pg. 6. During the pre-trial conference, the following occurred:

> MR. HASLAM: I did one on Mr. Bueno. But I have -- we're getting ready to go into trial as everybody knows, and the Court yesterday just instructed me to do it orally rather than present anything written. So, I don't have anything written prepared, so I don't know. I'm not in a position now where I can just kind of reverse field and go generate a written one.
>
> THE COURT: Let me see what I've got and maybe we can come up with something. We're going to go ahead and start.

*See* RR, Vol. 3, pg. 11.

At the start of the jury trial, the State presented the indictment, and Lowrey entered a plea of "not guilty." As its first witness, the State called Deputy Draper, who recognized the defendant, Lowrey, in open court. *See* RR, Vol. 3, pgs. 25-26. During Draper's and Chipman's testimony, the defense stipulated to the identity of Lowrey. *See* RR, Vol. 3, pg. 59.

As its third witness, the State called Dunavant; and upon the conclusion of the State's direct-examination, defense counsel for Lowrey argued outside the presence of the jury that he had subpoenaed Raul Bueno, an employee of Schneider Electric in El Paso. *See* RR, Vol. 3, pg. 136. The return of that subpoena was filed on August 5, 2014. *See* 2Supp. CR, pg. 4. Defense counsel for Lowrey advised that he got an e-mail from a lawyer in

Dallas, which stated:

> For various reasons, not the least of which is the full day of travel, I have been informed that Mr. Bueno will NOT be making it to the trial of your client.
>
> I wish I had better news but the last minute nature of this put Mr. Bueno and Square D in a difficult position, to say the least.

*See* CR, pg. 82; RR, Vol. 3, pgs. 136-137.

Defense counsel for Lowrey requested a writ of attachment and needed "to make a record." *See* RR, Vol. 3, pg. 138. After argument, the trial court denied the writ. *See* RR, Vol. 3, pgs. 138, 142.

Afterwards, the cross-examination of Dunavant began. *See* RR, Vol. 3, pg. 143. Upon the conclusion of Dunavant's testimony, the State called Craig Skidmore as its last witness; and after his testimony (RR, Vol. 3, pgs. 177-200), the State rested. *See* RR, Vol. 3, pg. 201.

Subsequently, Lowrey moved for a directed verdict (RR, Vol. 3, pgs. 202-204), which the trial court denied. *See* RR, Vol. 3, pg. 204. Then, Lowrey urged the trial judge to "reconsider having Mr. Bueno brought here." *See* RR, Vol. 3, pg. 204. After further argument, the trial judge remarked, "I'm going to deny your request." *See* RR, Vol. 3, pg. 206. *See also* RR, Vol. 3, pg. 208 ("The motion will be denied."). However, the trial judge also entered a "limine order that the State cannot argue that during its

closing that the removed some of the other widths from other crates." *See* RR, Vol. 3, pg. 206.

**Lowrey's Case-in-Chief.**

During his case-in-chief, Lowrey began and concluded his testimony on the first day of trial. *See* RR, Vol. 3, pgs. 209-279. Because a juror needed "to check the time because I have one in daycare," the trial court recessed the trial for that day. *See* RR, Vol. 3, pg. 280.

On the second day of the jury trial, August 6th (RR, Vol. 4, pg. 1), the trial court pre-admitted the defendant's exhibits 4, 5 and 6. *See* RR, Vol. 4, pg. 6. On the morning of August 6th, Lowrey also filed a motion for continuance (CR, pgs. 68-82) "based on the nonappearance of the witness Bueno." *See* RR, Vol. 4, pgs. 6-7. The trial court denied that motion and signed the order to that effect. *See* RR, Vol. 4, pg. 7; CR, pg. 83.

As the guilt-innocence phase concluded, the trial court read its charge to the jury. *See* RR, Vol. 4, pg. 68; 1Supp. CR, pgs. 3-7. After closing arguments, the jury retired to begin its deliberations (RR, Vol. 4, pgs. 94-95); and upon the conclusion of its deliberations, the jury returned a verdict. *See* 1Supp. CR, pg. 8. By its verdict, the jury found Lowrey guilty of the offense of theft of Material Aluminum/Copper/Bronze/Brass less than

$20,000.00, as charged in count 2 of the indictment.  *See* RR, Vol. 4, pg. 97; 1Supp. CR, pg. 8.  The verdict was unanimous.  *See* RR, Vol. 4, pg. 97.  The trial court then discharged the jury.  *See* RR, Vol. 4, pgs. 97-99.

**Punishment Phase of the Jury Trial.**

During the punishment phase, the State offered final judgments of conviction, and then rested.  *See* RR, Vol. 4, pgs. 101-102.  Lowrey presented his mitigation evidence (RR, Vol. 4, pgs. 102-120), and rested.  *See* RR, Vol. 4, pg. 121.

After brief argument from both parties, the trial court found Lowrey guilty of theft, as alleged in count 2 of the indictment.  *See* RR, Vol. 4, pg. 125.  The trial judge then assessed punishment and sentenced Lowrey to two (2) years confinement in the state jail division but probated that sentence for five (5) years of community supervision.  *See* RR, Vol. 4, pgs. 125-126.

On August 6th, the trial court signed its final judgment of conviction by jury (CR, pgs. 95-96), that was later filed of record on August 26, 2014.  *See* CR, pg. 95.  On August 12, 2014, Lowrey timely filed his notice of appeal.  *See* CR, pg. 94.

**Proceedings in this Court of Appeals.**

In this Court, Lowrey filed a notice of appeal on or about August 18,

2014. The District Clerk of Lamar County filed the Clerk's Record on or about November 14, 2014. The official court reporter filed the Reporter's Record on or about December 9, 2014. Subsequently, the District Clerk of Lamar County filed supplemental Clerk's Records on or about December 29th and February 9, 2015.

On or about February 12, 2015, Lowrey filed his brief. On or about March 16th, the State filed the first motion (of two motions) to extend the time to file its brief, which this Court granted. On or about April 15, 2015, the State filed its second motion for extension of time to file its brief, which this Court granted until May 6th. The State filed its brief on May 6, 2015.

## SUMMARY OF THE ARGUMENT

By this appeal, Lowrey brought four (4) issues/points of error which alleged that (1) the trial court abused its discretion in denying a writ of attachment for a defense witness, Raul Bueno (Bueno); (2) the trial court abused its discretion in denying a motion for continuance based on the non-appearance of the witness, Bueno; (3) the trial court erred in holding the evidence to be sufficient as to the identity of the victim; and (4) the trial court erred in holding the evidence to be sufficient because of a fatal variance between the name of the victim alleged ("Joe Tex Express") and

"Joe Tex Xpress, Inc.").

Upon final submission, this Court should overrule each of these issues/points of error, and affirm, for the following reasons: (1) the trial court did not abuse its discretion in denying the writ of attachment because (a) Lowrey did not carry his burden to show materiality as to the witness, Bueno; and (b) Lowrey did not exercise diligence in timely serving Bueno; (2) the trial court did not abuse its discretion in denying the motion for continuance for sub-reasons (a)-(b) above; (3) the evidence was legally-sufficient for a rational jury to find "Joe Tex Express" was the specific owner of the property; and (4) the alleged variance, if any, between the name alleged and the name proved was not fatal.

## ARGUMENT AND AUTHORITIES

**ISSUE/POINT OF ERROR PRESENTED IN REPLY NO. 1: THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE WRIT OF ATTACHMENT.**

A. **Standard of Review: Abuse of Discretion.**

With his first issue/point of error on appeal, Lowrey complained that he was entitled to compulsory process to secure the presence of a witness. *See* Appellant's Brief, pgs. 2, 15-20. In the present case, the trial court initially ruled, "I'm going to tell you, I'm going to deny your request for a

writ of attachment."  *See* RR, Vol. 3, pg. 138.  Later, the trial court stated:

> THE COURT:  Well, the Court's recollection of the testimony was that the boxes are easily opened.  There was no evidence that any of the other boxes were opened, just the one.  So, the Court is going to deny your request for the writ.  And you can obviously ask on cross.

*See* RR, Vol. 3, pgs. 141-142.

This Court should review the trial court's decision to deny the writ of attachment using the abuse-of-discretion standard.  *See Clark v. State*, 305 S.W.3d 351, 355 (Tex. App.--Houston [14th Dist.] 2010), *aff'd*, 365 S.W.3d 333 (Tex. Crim. App. 2012); *Emenhiser v. State*, 196 S.W.3d 915, 921 (Tex. App.--Fort Worth 2006, pet. ref'd); *Rodriguez v. State*, 90 S.W.3d 340, 358 (Tex. App.--El Paso 2001, pet. ref'd).

B.     **The Right to Compulsory Process Was Not Absolute.**

Criminal defendants have a right to compulsory process for obtaining witnesses.  *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10.  But the right to compulsory process is not absolute.  *See Emenhiser*, 196 S.W.3d at 921.

"The Sixth Amendment does not guarantee, however, the right to secure the attendance and testimony of any and all witnesses; rather, it guarantees only compulsory process for obtaining witnesses whose

-15-

testimony would be both material and favorable to the defense." *See Coleman v. State*, 966 S.W.2d 525, 527-28 (Tex. Crim. App. 1998). "To exercise the federal constitutional compulsory process right, the defendant must make a plausible showing to the trial court, by sworn evidence or agreed facts, that the witness' testimony would be both material and favorable to the defense." *See id*. at 528. "A defendant who has not had an opportunity to interview a witness may make the necessary showing by establishing the matters to which the witness might testify and the relevance and importance of those matters to the success of the defense." *See id.*

It is the burden of the appellant, Lowrey, to show that the testimony for which he seeks compulsory process was material and necessary to his defense. *See Castillo v. State*, 901 S.W.2d 550, 553 (Tex. App.--El Paso 1995, pet. ref'd) (citing *Hardin v. State*, 471 S.W.2d 60, 62 (Tex. Crim. App. 1971)). In *Hardin*, defense counsel took the stand and testified that although he believed that missing witnesses would support the defendant's alibi, he did not know what the witnesses would say. *See Castillo*, 901 S.W.2d at 553. Counsel's mere belief that a witness would support the defense's case is insufficient to establish materiality. *See Emenhiser*, 196 S.W.3d at 921 (citing *Castillo*, 901 S.W.2d at 553; *Hardin*, 471 S.W.2d at 62)). Similarly,

in *Varela v. State*, 561 S.W.2d 186 (Tex. Crim. App. 1978), the Court held that the defendant's testimony that a missing witness might say something to the defendant's benefit was not sufficient to show that the witness was material to the defense. *See Castillo*, 901 S.W.2d at 553 (citing *Varela*, 561 S.W.2d at 191).

1. **Lowrey Did Not Carry His Burden to Show Materiality.**

In the present case, Lowrey did not carry his burden to show that Bueno's testimony was material and necessary to his defense. *See Castillo*, 901 S.W.2d at 553 (citing *Hardin*, 471 S.W.2d at 62); *Varela*, 561 S.W.2d at 191. The State requested defense counsel to "write out what he would have this person testify to, I can -- if he'll write it out, I can see if I can stipulate to it to avoid the need of a writ for somebody in El Paso." *See* RR, Vol. 3, pg. 137. *See also* RR, Vol. 3, pg. 142. But, nothing was ever written as to what Bueno would testify to. *See Coleman*, 966 S.W.2d at 528 (to exercise the federal constitutional compulsory process right, the defendant must make a plausible showing to the trial court, by sworn evidence or agreed facts).

Instead of making such a plausible showing to the trial court by sworn[1] evidence or agreed facts, *see id*, defense counsel argued that the testimony was needed to "unring a bell" (RR, Vol. 3, pg. 139, 140) and to

---

[1] Lowrey's motion for continuance was unsworn. *See* CR, pg. 71.

rebut the inference, which was allegedly created on direct-examination, that "there were other boxes opened on this shipment." *See* RR, Vol. 3, pg. 137. Instead of sworn evidence or agreed facts from Lowrey, the trial court was left with defense counsel's "mere belief" as to what Bueno would testify to, and counsel's "mere belief" was insufficient to establish materiality. *See Emenhiser*, 196 S.W.3d at 921 (citing *Castillo*, 901 S.W.2d at 553; *Hardin*, 471 S.W.2d at 62). Further, the trial court was left with its recollection of the testimony (RR, Vol. 3, pg. 141), and that "[t]here was no evidence that any of the other boxes were opened, just the one." *See* RR, Vol. 3, pg. 141-142. Because the trial court could have reasonably concluded that Lowrey did not carry his burden to show materiality, the trial court did not abuse its discretion in denying the writ of attachment. *See Clark*, 305 S.W.3d at 355, *Emenhiser*, 196 S.W.3d at 921; *Rodriguez*, 90 S.W.3d at 358.

2.   **Lowrey Did Not Exercise Diligence to Subpoena Witness.**

Moreover, the right to compulsory process is dependent upon an accused's initiative, and the nature of the right requires that its effective use be preceded by "deliberate planning and affirmative conduct" by the defendant. *See Rodriguez*, 90 S.W.3d at 358 (quoting *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988)). In *Driggers v. State*,

155 Tex. Crim. 475, 236 S.W.2d 497 (1950), the Texas Court of Criminal Appeals addressed a subpoena for the attendance of a witness that was issued six days before the trial date, and held the following:

> It appears to us that the process was not issued in time and that the delay in having the subpoena issued is unexplained. The court before whom the hearing was had has rather a wide discretion in such matters, and this court will not hold that he abused the same unless it definitely appears from the record that he has done so.

*See id*, 155 Tex. Crim. at 477, 236 S.W.2d at 498.

In the present case, Lowrey issued a subpoena on July 25, 2014, a Friday. *See* 2Supp. CR, pg. 3. According to the officer's return, Cynthia Nava ("SCH 3453") served Raul Bueno on July 29, 2014 (2Supp. CR, pg. 4), which was a Tuesday before the jury trial began with voir dire proceedings on Monday, August 4, 2014. *See* RR, Vol. 2, pg. 1. In serving a defense witness (Bueno) six days before trial, as in *Driggers*, the trial court could have reasonably concluded that Lowrey's right to compulsory process was not effectively used by "deliberate planning and affirmative conduct." *See Rodriguez*, 90 S.W.3d at 358. *See also Gentry v. State*, 770 S.W.2d 780, 787 (Tex. Crim. App. 1988) (the appellant has failed to prove he acted diligently in attempting to obtain the witness' presence in court). For this second reason, the trial court did not abuse its discretion in denying the writ

-19-

of attachment.

In conclusion, the trial court did not abuse its discretion in denying the writ of attachment. Therefore, Lowrey's first issue/point of error should be overruled.

**ISSUE/POINT OF ERROR PRESENTED IN REPLY NO. 2: THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE MOTION FOR CONTINUANCE.**

A. **Standard of Review: Abuse of Discretion.**

This Court should review a trial court's denial of a mid-trial continuance on an abuse of discretion standard. *See Vasquez v. State*, 67 S.W.3d 229, 240-41 (Tex. Crim. App. 2002).

Mid-trial, on the morning of August 6th, Lowrey filed his motion for continuance (CR, pgs. 68-82) "based on the nonappearance of the witness Bueno." *See* RR, Vol. 4, pgs. 6-7. The trial court denied that motion and signed the order to that effect. *See* RR, Vol. 4, pg. 7; CR, pg. 83.

B. **The Trial Court Did Not Abuse its Discretion in Denying Lowrey's Motion for Continuance.**

1. **Lowrey's Motion Made No Mention of the Statutory Requirement Under Article 29.06(3).**

In the present case, Lowrey's August 6th motion for continuance made no mention, as required by statute, of "[t]he facts which are expected to be

-20-

proved by the witness, and it must appear to the court that they are material."
*See* Tex. Code Crim. Proc. Ann. art. 29.06(3). *See also Gentry*, 770 S.W.2d at 786-87 (applying Article 29.06 requirements to motions for continuance made during the course of trial under Article 29.13). Even if the motion had complied with the statutory requirement under article 29.06(3), the trial court could have reasonably concluded that Lowrey did not carry his burden to show materiality. Therefore, the trial court did not abuse its discretion in denying Lowrey's mid-trial motion for continuance.

2. **Lowrey's Motion Was Unsworn.**

In *Gentry*, there was no written sworn motion for continuance. *See Gentry*, 770 S.W.2d at 786. Since the motion is not self-proving, the Texas Court of Criminal Appeals held in *Gentry* that the Texas Court of Criminal Appeals also held that "the record must contain an affidavit or otherwise reflect what the absent witness would have testified to." *See id*.

In the present case, Lowrey's motion was written, but unsworn. *See* CR, pg. 71. Further, Lowrey's motion did not contain an affidavit, that was signed and notarized, and did not reflect what Bueno would have testified to. *See* CR, pg. 71; *Gentry*, 770 S.W.2d at 786.

Accordingly, the trial court did not abuse its discretion in denying the

mid-trial motion for continuance. Lowrey's second issue/point of error should be overruled.

**ISSUE/POINT OF ERROR PRESENTED IN REPLY NO. 3: THE EVIDENCE WAS LEGALLY-SUFFICIENT FOR THE JURY, AS A RATIONAL FACT FINDER, TO FIND THAT "JOE TEX EXPRESS" WAS THE SPECIFIC OWNER OF THE PROPERTY.**

### A. Standard of Review: Sufficiency of the Evidence.

With his third issue/point of error, Lowrey complained that the trial court erred in holding the evidence to be sufficient to sustain the conviction because the evidence was insufficient to prove the identity of the victim, as alleged in the indictment. *See* Appellant's Brief, pg. 21.

In evaluating legal sufficiency, this Court should review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of theft beyond a reasonable doubt. *See Taylor v. State*, 440 S.W.3d 854, 856 (Tex. App.--Texarkana 2013), *aff'd*, 450 S.W.3d 528 (Tex. Crim. App. 2014) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Under *Jackson*, when reviewing the sufficiency of the evidence, this Court views all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 318-19.

This Court examines legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *See Taylor*, 440 S.W.3d at 856; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318-19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

B.    **The Evidence Was Legally-Sufficient to Prove the Existence of the Specific Owner, i.e., an Entity Known as "Joe Tex Xpress".**

Article 21.08 of the Texas Code of Criminal Procedure provided the following:

> Where one person owns the property, and another person has the possession of the same, the ownership thereof may be alleged to be in either. Where property is owned in common, or jointly, by two or more persons, the ownership may be alleged to be in all or either of them. When the property belongs to the estate of a deceased person, the ownership may be alleged to be in the executor, administrator or heirs of such deceased person, or in any one of such heirs. Where the ownership of the property is unknown to the grand jury, it shall be sufficient to allege that fact.

*See* Tex. Code Crim. Proc. Ann. art. 21.08.

### 1. The Existence of the Specific Owner is an Element of the Offense, But Not the Name.

The existence of the specific owner is an element, but not the name. *See Byrd v. State*, 336 S.W.3d 242, 251 (Tex. Crim. App. 2011). Nowhere in the penal code is the name of the owner made a substantive element of theft. *See id* (citing *Freeman v. State*, 707 S.W.2d 597, 602-03 (Tex. Crim. App. 1986) (plurality op.) (noting that the name of the owner of property is not a part of the definition of theft, although the name of the owner must be alleged in the charging instrument)).

In *Byrd*, the Texas Court of Criminal Appeals reasoned that the Code of Criminal Procedure, as a matter of state law, requires the State to allege the name of the owner of property in its charging instrument. *See Byrd*, 336 S.W.3d at 251, n. 48. In *Byrd*, the Court of Criminal Appeals also held that:

> When an entity, such as a corporation, owns property, the traditionally preferable practice had been to allege ownership in a natural person acting for the corporation. But as Judge Clinton noted, this practice developed in the early twentieth century before the adoption of the 1974 Penal Code when the definition of "owner" for purposes of the theft statutes was much narrower. Judge Clinton explained that, under the current Penal Code, a corporation may both own and have actual possession of property. Thus it is perfectly permissible, and sometimes preferable, to now allege the corporation--Wal-Mart, for example--as the owner of the property and then call any agent or employee who holds a relevant position in the company to testify that the corporation did not give effective

consent for a person to steal or shoplift its property.

> Although the *name* of the owner is not a substantive element of theft, the State is required to prove, beyond a reasonable doubt, that the person (or entity) alleged in the indictment as the owner is the same person (or entity)--regardless of the name--as shown by the evidence. . . . In sum, it is the identity of the person, not his formal name, that controls and guides the sufficiency of the evidence review.

*See id*. at 252-53 (references to footnotes omitted).

In applying the *Byrd* rationale above, the State's indictment alleged "Joe Tex Express" as the owner thereof. *See* CR, pg. 4. During the trial on August 5, 2014, Dunavant testified that she worked for "Joe Tex Xpress" in an office in Mount Vernon, Texas since 2006. *See* RR, Vol. 3, pgs. 112-113. Dunavant testified that she was the "CFO" or chief financial officer, and that she was personally familiar with Lowrey as an "owner-operator for our company." *See* RR, Vol. 3, pg. 114. Dunavant also testified, as follows:

> Q.    Okay.    And what type of things does your company ship?
>
> A.    Metals, machinery, lumber, building materials, railroad materials, things like that.

*See* RR, Vol. 3, pg. 114. *See also* Defendant's Exhibit 1.

Viewing the evidence above in the light most favorable to the jury's verdict, a rational fact finder could have found, beyond a reasonable doubt,

that "Joe Tex Xpress" was an "entity" and the specific owner, as alleged in the indictment. *See* CR, pg. 4. In addition to the references to a "company" above, a rational fact finder could have inferred that a chief financial officer would act as an agent or employee of the "entity." Further, a rational fact finder could have found, beyond a reasonable doubt, that "Joe Tex Xpress" was the same entity--regardless of the name that included "Inc."--as shown by the evidence. *See Byrd*, 336 S.W.3d at 252-53. Here, there was no evidence of any "person" that could be identified as "Joe Tex"; rather, the identity of the entity ("Joe Tex Xpress") remained the same and consistent throughout the entire jury trial.

Thus, the evidence was legally-sufficient for a rational jury to find, beyond a reasonable doubt, that the owner was an entity known as "Joe Tex Xpress." Accordingly, Lowrey's third issue/point of error should be overruled.

**ISSUE/POINT OF ERROR PRESENTED IN REPLY NO. 4: THE ALLEGED VARIANCE, IF ANY, (BETWEEN THE NAME OF THE SPECIFIC OWNER ALLEGED AND THE NAME PROVED) WAS IMMATERIAL, AND NOT FATAL.**

A. **Standard of Review: Material and Immaterial Variances.**

With his final issue, Lowrey alleged that there was a material and fatal variance between the name alleged and the name proved. *See* Appellant's

Brief, pg. 21. There are two types of variances in an evidentiary-sufficiency analysis: material variances and immaterial variances. *See*, *e.g.*, *Thomas v. State*, 444 S.W.3d 4, 9 (Tex. Crim. App. 2014).

Immaterial variances do not affect the validity of a criminal conviction, and the Texas Court of Criminal Appeals has held that a hypothetically correct jury charge need not incorporate allegations that would give rise to only immaterial variances. *See id* (citing *Geick v. State*, 349 S.W.3d 542, 545 (Tex. Crim. App. 2011); *Gollihar v. State*, 46 S.W.3d 243, 256 (Tex. Crim. App. 2001) (holding that the fact that the indictment alleged the incorrect serial number for a stolen Go Kart was immaterial and did not warrant reversal of the conviction because the serial number was not a statutory element and the appellant was not prejudiced by use of the incorrect serial number)). However, a material variance renders a conviction infirm, and the only remedy is to render an acquittal. *See Thomas*, 444 S.W.3d at 9 (citing *Cada v. State*, 334 S.W.3d 766, 776 (Tex. Crim. App. 2011) (reversing the judgment of the court of appeals and rendering an acquittal when there was a material variance between the indictment and the proof adduced at trial); *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000) ("If the evidence is insufficient to support [the] conviction, the

remedy is acquittal.").

B.    **The Alleged Variance, If Any, Between the Name Alleged and the Name Proved Was Immaterial.**

As previously explained above, the existence of the specific owner is an element, but not the name. *See Byrd*, 336 S.W.3d at 251. Nowhere in the penal code is the name of the owner made a substantive element of theft. *See id.*

In the present case, the alleged variance, if any, between the name alleged (i.e. "Joe Tex Express") (CR, pg. 4) and the name proved ("Joe Tex Xpress, Inc.") (e.g. Defendant's Exhibit 1) was immaterial because the name of the specific owner was not a substantive element of theft, *see id*; and a hypothetically correct jury charge need not incorporate allegations that would give rise to only immaterial variances. *See Thomas*, 444 S.W.3d at 9. Also, the Texas Court of Criminal Appeals held in *Middleton v. State*, 476 S.W.2d 14 (Tex. Crim. App. 1972) that "there is nothing to indicate that the omission of the averment that the Humble Oil and Refining Company is a corporation could have misled the appellant." *See id*. at 16. *See also Boyette v. State*, 632 S.W.3d 915, 917 (Tex. App.--Houston [14th Dist.] 1982, pet. ref'd).

In *Boyette*, "Jetronics Inc." was a small company dealing in the sale of

electronic, radar and aircraft equipment. *See id*. at 916. The appellant was the company bookkeeper which authorized her to write checks on the corporation accounts. *See id*. at 917. The evidence at trial was undisputed that in September and October of 1978, the appellant wrote two checks for her own benefit on a Jetronics' account; and a jury convicted her of felony theft. *See id*.

In *Boyette*, the appellant maintained that the trial court erred in entering judgment and in failing to set aside her conviction and grant her a new trial because there was a fatal variance between the name alleged in the indictment and the name proved, thereby making the evidence insufficient to establish ownership in the named owner. *See id*. Specifically, the appellant pointed out the indictment alleged ownership of the stolen property in "Jetronics," when the true name of the owner as shown in the evidence was "Jetronics, Inc." *See id*.

In *Boyette*, however, the court of appeals disagreed by not seeing this variance as fatal, nor did the court of appeals believe the evidence was insufficient to establish ownership of the stolen property. *See id*. The *Boyette* Court reasoned that it was an established principle of Texas criminal law that all essential averments in an indictment must be proved as alleged.

*See id*. Even though the "true" name of the owner was Jetronics, Inc., the *Boyette* Court reasoned that the testimony was uncontroverted that Jetronics and Jetronics, Inc. were one and the same, and that Jetronics, Inc. was generally referred to as Jetronics. *See id*. In *Boyette*, the court of appeals saw no variance between the name alleged in the indictment and the name proved. *See id*. If a variance did exist at any point in the testimony, it was not of a fatal or material nature when seen in light of the overall testimony. *See id*.

Clearly, the *Boyette* rationale applied to the present facts and circumstances, and the alleged variance between the name alleged (i.e. "Joe Tex Express") and the name proved ("Joe Tex Xpress, Inc.") was not fatal. *See id*. Throughout Lowrey's trial, the testimony was uncontroverted that "Joe Tex Express" and "Joe Tex Xpress, Inc." were "one and the same" trucking company that contracted with Lowrey as an owner-operator to haul loads. *See* RR, Vol. 3, pg. 114; Defendant's Exhibit 1. If a variance did exist at any point in the testimony, as in *Boyette*, it was not of a fatal or material nature when seen in light of the overall testimony. *See id*. Therefore, Lowrey's fourth and final issue/point of error should be overruled.

## <u>PRAYER</u>

WHEREFORE PREMISES CONSIDERED, the State of Texas prays that upon final submission without oral argument, this Court affirm the trial court's final judgment of conviction, adjudge court costs against the appellant, and for such other and further relief, both at law and in equity, to which it may be justly and legally entitled.

Respectfully submitted,

Gary D. Young
Lamar County & District Attorney
Lamar County Courthouse
119 North Main
Paris, Texas   75460
(903) 737-2470
(903) 737-2455 (fax)

By:_____
   Gary D. Young, County Attorney
   SBN# 00785298

**ATTORNEYS FOR STATE OF TEXAS**

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, the "Appellee's (State's) Brief" was a computer-generated document and contained 7997 words--not including the Appendix, if any. The undersigned attorney certified that he relied on the word count of the computer program, which was used to prepare this document.

_____

GARY D. YOUNG
gyoung@co.lamar.tx.us

## CERTIFICATE OF SERVICE

This is to certify that in accordance with Tex. R. App. P. 9.5, a true copy of the "Appellee's (State's) Brief" has been served on the 6th day of May, 2015 upon the following:

Gary L. Waite
104 Lamar Avenue
Paris, TX   75460

_____

GARY D. YOUNG
gyoung@co.lamar.tx.us