OPINION
Opinion by Justice MOSELEY.
In November 2010, Henry Taylor, Jr., the owner and operator of Taylor’s Custom Signs in Longview,[1] agreed to perform two jobs for Reich Builders (owned by Jeff Reich).[2] First, Taylor was to construct and wire an LED illuminated monument *856 sign for commercial property Reich owned in Kilgore. Second, Taylor was to refurbish a pole sign at the Lock Box (a storage facility in Longview) and install an LED message board on that sign. Taylor represented that the sign work could be completed before Christmas of that year. When the work remained unfinished in April 2011, Taylor was indicted for theft of property. After a bench trial, Taylor was found guilty of theft of property having a value of $1,500.00 or more but less than $20,000.00 and was sentenced to a one-year term of confinement in the State Jail Division of the Texas Department of Criminal Justice.
In his sole point of error on appeal, Taylor claims the evidence is legally insufficient to support his conviction. Because legally sufficient evidence supports the conviction, we affirm the judgment of the trial court.
I. Standard of Review
In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court’s judgment to determine whether any rational jury could have found the essential elements of theft beyond a reasonable doubt. Brooks v. State, 323 S.W.3d 893, 912 (Tex.Crim.App.2010) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); Hartsfield v. State, 305 S.W.3d 859, 863 (Tex.App.-Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the Brooks opinion, while giving deference to the responsibility of the jury “to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.” Hooper v. State, 214 S.W.3d 9, 13 (Tex.Crim.App.2007) (citing Jackson, 443 U.S. at 318-19, 99 S.Ct. 2781); Clayton v. State, 235 S.W.3d 772, 778 (Tex.Crim.App.2007).
II. Evidence at Trial
On November 5, 2010, Reich paid Taylor $14,657.25, this sum representing one-half of the total cost of four LED signs, together with the construction and wiring of a tenant sign in Kilgore.[3] Two weeks after the November 5 payment, Taylor requested an additional $10,000.00 payment so that the signs, now ostensibly ready for shipment, could be shipped. Reich paid Taylor the additional funds in order to have the signs shipped.[4]
Both Reich and Vicki Yocum, Reich’s office manager, believed the signs were shipped on payment of the final $10,000.00 installment. When the signs did not arrive in December, Taylor explained that they were being shipped by boat from China. In response to Yocum’s January request for verification of purchase, Taylor provided an invoice indicating that four red, outdoor programmable message signs (model SR-2426) were purchased from Affordable LED, Inc., in Rowland Heights, California, on November 18, 2010, for a total cost of $22,600.00. The invoice is marked “paid in full with credit card.”
Other evidence regarding the number and type of signs ordered differs from the information reflected on the November 18 invoice. Taylor testified that he ordered a total of four LED signs — to be assembled into two double-sided illuminated signs— one for each location. According to Taylor, only two such signs were ordered from Affordable LED in California on November 18. Two additional signs were ordered *857 from Elite Signs in Houston on November 11. Taylor explained that although he had previously ordered from Elite, he only ordered two signs from them on this occasion because Elite shipments take eight to nine weeks to arrive.[5] Because Affordable LED had a shorter turn-around-time, Taylor ordered two signs from Affordable.[6]
Interestingly, a second invoice from Affordable LED was produced by Taylor at trial. This invoice is dated February 2, 2011. It indicates that four outdoor, programmable message signs (model SR-2426) were ordered, but only two were invoiced at a total cost of $9,470.00.[7] The invoice is stamped “PAID 03/07/2011.” Taylor testified that he actually paid this invoice a few days before March 7, 2011, and that he paid Affordable LED a total of $14,000.00 or $15,000.00. It took two weeks for the signs to arrive.
The Elite November 11, 2010, invoice indicates that two LED display signs, costing $11,600.00, were paid for by money order, were to be shipped on January 12, 2011, and were scheduled to arrive on January 18, 2011. Taylor testified that he received the Elite signs on January 12, 2011.
By February, when the signs were not installed, Yocum began calling Taylor at least once a week and sometimes more often than that to inquire as to their status. Yocum testified that in late February or early March, Taylor indicated the signs were being shipped by Affordable LED in California. In March, Taylor and his crew delivered boxes, supposedly containing the long-awaited signs, to the Lock Box location. The signs were not installed that day, however, because the job required additional materials. Taylor stored the signs at the Lock Box location per Yo-cum’s request. Yocum testified that she opened one of the boxes, and still has it. Of the equipment it contained, Yocum stated, “It’s a hundred-dollar piece from what I’ve been told.”
The third week in March, Taylor returned to the Lock Box location with Pete Gerbine, the manager of East Texas Signs in Longview, to assist with the installation of the LED message board. Taylor was issued a sign permit from the City of Longview on November 22, 2010, for the installation of a commercial sign at the Lock Box. Gerbine discovered, however, that this permit was not sufficient for the installation of an LED message board.[8] Gerbine offered to bring the signs to his shop, obtain the appropriate documentation and permits, and complete some fabrication work on the signs. Because he believed Gerbine was trying to take over his job, Taylor rejected this offer.
Thereafter, Taylor advised Yocum that he was taking the signs and would install them when he received the proper permit.[9] *858 Believing that Taylor had no intention of ever installing the signs, Reich filed a complaint against Taylor on March 24, 2011, with the district attorney’s office.
After the failed attempt to install signage at the Lock Box, Taylor learned from the City of Longview permitting office that information regarding lighting intensity was required for any LED sign permit. Taylor contacted Affordable LED to obtain the necessary information. The following day, Affordable LED provided Taylor with the requested information regarding lighting intensities.[10]
With this information in hand, Taylor completed an LED sign permit application and submitted it to the City of Longview on April 1, 2011. A few days later, Taylor turned himself in to authorities after having learned of a warrant for his arrest for theft in this case. Taylor bonded out the same day and hired an attorney on April 8. On April 27, approximately two weeks after Taylor’s arrest, the City of Longview issued the LED sign permit for the Lock Box.[11] Taylor never installed any of the four LED signs.[12]
Even so, there is no dispute that Taylor did complete some of the agreed-to work. Taylor obtained a permit for installation of the multi-tenant monument sign in Kilgore on November 28, 2010, and at some point thereafter, constructed and installed that sign. In spite of this effort, the job was not properly completed because Taylor failed to run electricity to the sign. Reich *859 had to pay an electrician to revamp the lighting and finish hooking up the electricity.[13]
Taylor also obtained a sign permit from the City of Longview in November 2010. Pursuant to this permit,, Taylor removed the old pole sign at the Lock Box ahd installed a new one in its place.[14] He dug a line from the sign to the building for the electrical wires, although the wiring was not installed. Taylor apparently delivered signage to the Lock Box on two different occasions (both in March) and attempted to install the signage the third week in March. This attempt was foreclosed when Taylor realized or discovered he did not have an adequate permit for the LED sign. Taylor testified that he ordered and received four LED signs per the parties’ agreement, and was in possession of those signs at the time of his arrest.[15]
III. The Evidence is Legally Sufficient to Support the Conviction
Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App.1997). The hypothetically correct jury charge “sets out the law, is authorized by the indictment, does not unnecessarily increase the State’s burden of proof or unnecessarily restrict the State’s theories of liability, and adequately describes the particular offense for which the defendant was tried.” Id.
In order to prove Taylor committed theft, the State had the burden to establish that Taylor (1) with intent to deprive the owner (Reich Builders) of property,[16] (2) unlawfully appropriated property, (3) without the effective consent of the owner. Tex. Penal Code Ann. § 31.03 (West Supp. 2013); Ehrhardt v. State, 334 S.W.3d 849, 852 (Tex.App.-Texarkana 2011, pet. ref'd). Appropriation is unlawful when it is without the owner’s effective consent. Tex. Penal Code Ann. § 31.03(a), (b)(1) (West Supp.2012); McClain u State, 687 S.W.2d 350, 353 n. 7 (Tex.Crim.App.1985). To appropriate means any exercise of control over the property in question. McClain, 687 S.W.2d at 353 n. 7. Consent is ineffective if “induced by deception.” Tex. Penal Code Ann. § 31.01(3)(A) (West Supp.2012); Ehrhardt, 334 S.W.3d at 853 (to “induce” means to “bring about, . produce, or cause”).
Here, the theft is alleged to have occurred in connection with a contract. Such a claim “requires proof of more than an intent to deprive the owner of property and subsequent appropriation of the property .... The State must prove that the appropriation was a result of false pretext, or fraud.” Wirth v. State, 361 S.W.3d 694, 697 (Tex.Crim.App.2012). The mere failure to perform a contract is not sufficient to establish guilt of theft. Phillips v. State, 640 S.W.2d 293, 294 (Tex.Crim.App. [Panel Op.] 1982). Likewise, the failure “ ‘to return or pay back money after failing *860 to perform a contract, for the performance of which the money was paid in advance’ ” is not sufficient to establish guilt of theft. Ehrhardt, 334 S.W.3d at 853-54; Phares v. State, 301 S.W.3d 348, 352 (Tex.App.-Beaumont 2009, pet. ref'd) (quoting Cox v. State, 658 S.W.2d 668, 671 (Tex.App.-Dallas 1983, pet. ref'd)). “[U]nder the terms of [a contract] individuals typically have the right to ‘deprive the owner of proper^ ty,’ albeit in return for consideration.” Baker v. State, 986 S.W.2d 271, 274 (Tex.App.-Texarkana 1998, pet. ref'd). Our inquiry is thus focused on whether Taylor unlawfully deprived Reich of property. See Ehrhardt,. 334 S.W.3d at 853-54.
If one looks at all of the dealings between Taylor and Reich as being a sin-glé, unitary transaction, it appears that Taylor’s actions are simply an example of monumental ineptitude in business which do not rise to the level of criminal activity. However, there is at least one instance during the continuing transaction that stands out, that being the one which took place on or about November 18, 2010, wherein Taylor represented that it was necessary for Reich to pay $10,000.00 in order to have the signs shipped. The fact-finder could certainly conclude, based on that evidence, that such representation was false and that it was upon this false representation that Reich paid Taylor $10,000.00.
Although Taylor maintains that because this payment (made two weeks after the overall agreement for the installation of the sign was reached) was. within the parameters of the agreed-upon price for the signs and was paid at a time when shipping was expected, criminal intent is negated. That is not necessarily so.' This ignores the fact that the payment by Reich was made on reliance upon a false representation.
While we agree with Taylor that the entire chain of events does not evidence the intent, at the time the contract was formed, to unlawfully deprive Reich of its funds, a false representation made by Taylor to induce Reich to make the $10,000.00 payment referenced above is legally sufficient evidence supporting a finding of unlawful appropriation, the basis for the claim of theft.
Based on this evidence, the fact-finder could have reasonably believed that Taylor induced Reich to make a $10,000.00 payment within two weeks of the November 5 down payment by falsely representing that the signs were ready for shipment when they were not.
We distinguish this case from the Eh-rhardt case to which reference is made above. In Ehrhardt, we determined that the defendant there had certainly been remiss in his business practices but had not committed a crime. We point out that although Ehrhardt had lied to the person with whom he had contracted to build, the other person to that contract testified that none of the payments of money made by her were made in reliance upon those misrepresentations. The case before us is more similar to Higginbotham v. State, 356 S.W.3d 584 (Tex.App.-Texarkana 2011, pet. ref'd), wherein Higginbotham, the defendant, had used deception to induce the person with whom he had a contract to make one or more specific payments. In Higginbotham, we ruled that consent which is “induced by deception is ineffective.” Id. at 590.
There is some evidence to support the finding of the trial court.
IV. Conclusion
For the reasons stated, we affirm the judgment of the trial court.
Dissenting Opinion by Justice CARTER.

. Taylor does business as Taylor’s Custom Signs, Taylor Made Signs, and Taylor Sign Company.

. Taylor also agreed to do some refurbishing work on two wall signs for Reich.

. Previously, on November 3, 2010, Reich paid Taylor $1,082.50. This payment represented one-half of the total cost of refurbishing work at the Lock Box.

. Specifically, the invoice states, “Need $10,000 for Led sign pick up they have to be PAID N full when pick up.” Each of the three checks from Reich to Taylor cleared the bank.

. The Elite signs, ordered for the Kilgore location, were smaller than the Lock Box signs due to zoning regulations. These signs were fully colored, while the larger signs were red.

. Taylor explained that he did not want to order all four signs from Affordable LED, because he was not familiar with their track record. Although Taylor priced four signs, he testified that he only ordered two from Affordable. Taylor paid a. down payment by credit card for these signs.

. The invoice indicates that two signs were backordered.

. According to Gerbine, the City will not issue an LED message board permit without- the proper documentation from the manufacturer showing the light output and certain settings.

. According to Yocum, Taylor told her that he was taking the signs to the City of Longview to have permits issued. The Affordable LED signs were never installed or returned to the property. If the signs would have been completed and the work done, Taylor would have been due another $4,600.00. Taylor did not request additional money after the $10,000.00 was paid.

. The email discusses lighting intensities for a single color LED programmable sign, model # SR-2426. The invoice from Affordable LED dated February 2, 2011, lists the same item — # SR-2426.

. Defense exhibits 10-15 are photographs of the LED signs that were never installed. The smaller Elite signs were ordered for the Kil-gore location. The four LED signs were in Taylor's possession prior to his arrest and remained in his possession at the time of trial.

. In addition to evidence relating to the offense in question, the State introduced the testimony of four witnesses concerning problems they experienced with Taylor and his work. Cathy Lee, the owner of a coffee shop in Liberty City, testified that she hired Taylor to install a non-illuminated sign at her shop on September 3, 2008. Lee paid one-half of the sign cost up front and was told the sign would be installed within two weeks. When the sign was not timely installed, Lee contacted Taylor, who indicated on more than one occasion that the sign would be ready the following week. Approximately six months later, Taylor installed the sign on a Sunday evening before she had the opportunity to inspect it. The sign was improperly secured and the font was not what Lee ordered. Taylor assured Lee he would correct these problems, but he failed to do so.
James Randall Arrendell contacted Taylor in May 2009 to install an illuminated sign at his business by August of that year. Arrendell paid Taylor the full price prior to installation. Taylor installed the sign, but did not complete the necessary electrical work. After ”[p]roba-bly a hundred” requests to complete work on the sign, Arendall was forced to hire another sign contractor to complete the work.
Dorris Wallace, owner of the Village Shopping Center in Hallsville, hired Taylor to install a double-faced illuminated sign at the shopping center. Wallace paid one-half of the installation price up front, but the sign was never completed. Taylor poured concrete for the sign base, but the concrete forms collapsed, leaving an unsightly cement "blob.” Taylor planned on bricking around the concrete to make it look good. Unfortunately, the concrete for the sign was placed on the State’s right-of-way and had to be removed by a third party at additional cost to Wallace. Taylor made a number of excuses and promises to deliver the sign, but never did so and never refunded Wallace's money.
Tucker Woods’ chiropractic office was located in Wallace’s shopping center. Woods hired Taylor to install a sign for his business in February 2010. The sign was to be in place prior to May of that year. Woods paid one-half of the sign cost up front and paid the balance in May or June, but the sign was never installed. Taylor offered many and various reasons why the sign was not finished.

. Although the testimony is not entirely clear on this issue, it is apparent that the LED signs ordered for the Kilgore location were never installed.

. The LED portion of the sign was not installed.

. Additionally, Taylor did some painting work at the Lock Box.

. "Deprive” means,
(A) to withhold property from the owner permanently or for so extended a'period of time that a major portion of the value or enjoyment of the property is lost to the owner;
(B) to restore property only upon payment of reward or other compensation; or
(C) to dispose, of property in a manner that makes recovery of the property by the owner unlikely.
Tex Penal Code Ann. § 31.01(2)(A), (B), (C) (West Supp.2013).