ACCEPTED
06-15-00060-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
9/28/2015 10:37:00 AM
DEBBIE AUTREY
CLERK

**ORAL ARGUMENT WAIVED**

CAUSE NO. 06-15-00060-CR

IN THE

COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
9/28/2015 10:37:00 AM
DEBBIE AUTREY
Clerk

_____

JESSE DWAYNE BLACK, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

ON APPEAL FROM THE COUNTY COURT;
LAMAR COUNTY, TEXAS; TRIAL COURT NO. 62549;
HONORABLE M.C. SUPERVILLE, JR., JUDGE

_____

# APPELLEE'S (STATE'S) BRIEF

_____

Gary D. Young
Lamar County and District Attorney
Lamar County Courthouse
119 North Main
Paris, Texas   75460
(903) 737-2470
(903) 737-2455 (fax)

**ATTORNEYS FOR THE STATE OF TEXAS**

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.2(a)(1)(A), the list of parties and counsel is not required to supplement or correct the appellant's list.

# TABLE OF CONTENTS

**PAGE NO.:**

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . .    i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . .    ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . .    iv

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . .    vii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . .    viii

ISSUE PRESENTED IN REPLY . . . . . . . . . . . . . . . . . . . . .    ix

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . .    2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . .    14

ARGUMENT AND AUTHORITIES

       **ISSUE PRESENTED IN REPLY NO. 1: THE EVIDENCE WAS LEGALLY SUFFICIENT FOR A RATIONAL JURY TO REASONABLY FIND THAT THE APPELLANT (MR. BLACK) WAS "OPERATING" THE MOTOR VEHICLE.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

       **ISSUE PRESENTED IN REPLY NO. 2: THE APPELLANT (MR. BLACK) FAILED TO PRESERVE ERROR: (1) HIS UNSWORN AND ORAL MOTION FOR CONTINUANCE PRESERVED NOTHING FOR APPEAL; AND (2) THE APPELLANT DID NOT FILE ANY MOTION FOR NEW TRIAL; OR ALTERNATIVELY, THE APPELLANT COULD NOT ESTABLISH, ON THIS RECORD, THAT THE TRIAL COURT ABUSED ITS DISCRETION..**    19

**PAGE NO.:**

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          22

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . .          23

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . .          24

# INDEX OF AUTHORITIES

**CASES:** **PAGE:**

*Anderson v. State*, 301 S.W.3d 276, 279-80 (Tex. Crim.
    App. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20,21

*Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim.
    App. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20,21

*Brooks v. State*, 323 S.W.3d 893, 912, n48 (Tex. Crim.
    App. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15, 19

*Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App.
    2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*Denton v. State*, 911 S.W.2d 388, 389, 390 (Tex. Crim. App.
    1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

*Dornbusch v. State*, 262 S.W.3d 432, 436 (Tex. App.--Fort
    Worth 2008, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

*Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App.
    2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*Harrison v. State*, 187 S.W.3d 429, 434 (Tex. Crim.
    App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

*Hernandez v. State*, 643 S.W.2d 397, 399 (Tex. Crim. App.
    1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

*Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App.
    2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*Jackson v. Virginia*, 443 U.S. 307, 318, 319, 99 S.Ct. 2781, 61
    L.Ed.2d 560 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15,16

| CASES: | PAGE: |
|---|---|
| *Kirsch v. State*, 357 S.W.3d 645, 651 (Tex. Crim. App. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 |
| *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16 |
| *Outland v. State*, 810 S.W.2d 474, 475 (Tex. App.--Fort Worth 1991, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . | 21 |
| *Pfeiffer v. State*, 363 S.W.3d 594 (Tex. Crim. App. 2012). . . . . . | 18 |
| *Priego v. State*, 457 S.W.3d 565, 568-69 (Tex. App.-- Texarkana 2015, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . | 16-17,18 |
| *Smith v. State*, 401 S.W.3d 915, 919 (Tex. App.--Texarkana 2013, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17,18 |
| *Strong v. State*, 87 S.W.3d 206, 215 (Tex. App.--Dallas 2002, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 18 |
| *Taylor v. State*, 440 S.W.3d 854, 856 (Tex. App.--Texarkana 2013), *aff'd*, 450 S.W.3d 528 (Tex. Crim. App. 2014). . . | 15,16 |
| *Taylor v. State*, 612 S.W.2d 566, 569 (Tex. Crim. App. [Panel Op.] 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 21 |
| *Vega v. State*, 267 S.W.3d 912, 916 (Tex. Crim. App. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16 |

**STATUTES:**                                                   **PAGE:**

TEX. CODE CRIM. PROC. ANN. ART. 29.03 (WEST 2009). .    20

TEX. CODE CRIM. PROC. ANN. ART. 29.06 (WEST 2009). .    22

TEX. PENAL CODE ANN. § 49.04 (WEST SUPP. 2014) . . . .    17

TEX. PENAL CODE ANN. § 49.04(A) (WEST SUPP. 2014). .    17

TEX. PENAL CODE ANN. § 49.04(A), (D)
    (WEST SUPP. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    vii

TEX. R. APP. P. 38.1(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    viii

TEX. R. APP. P. 38.2(A)(1). . . . . . . . . . . . . . . . . . . . . . . . . . .    viii

TEX. R. APP. P. 38.2(A)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . .    i

## STATEMENT OF THE CASE

This is a driving-while-intoxicated (DWI) case, a Class A misdemeanor. *See* Tex. Penal Code Ann. § 49.04(a), (d) (West Supp. 2014) ("If it is shown on the trial of an offense under this section that an analysis of a specimen of the person's blood, breath, or urine showed an alcohol concentration level of 0.15 or more at the time the analysis was performed, the offense is a Class A misdemeanor.").

A jury in Lamar County found Mr. Black guilty of the offense of driving while intoxicated, as charged in the information. *See* RR, Vol. 3, pg. 257; CR, pg. 46. Also, the jury found that Mr. Black committed the offense when an analysis of a specimen of his blood showed an alcohol concentration level of 0.15 or more, at the time the analysis was performed. *See* RR, Vol. 3, pgs. 257-258; CR, pg. 47.

The trial judge sentenced Mr. Black to 270 days confinement in the Lamar County jail and assessed court costs to be laid out with the jail sentence. *See* RR, Vol. 4, pg. 12. The trial judge also allowed work release if it was verified by the Sheriff's Department. *See* RR, Vol. 4, pg. 12.

From the trial court's final judgment and sentence (CR, pgs. 48-49), Mr. Black timely filed his notice of appeal. *See* Supp. CR, pg. 3.

## STATEMENT REGARDING ORAL ARGUMENT

The State of Texas will waive oral argument. *See* Tex. R. App. P. 38.1(e), 38.2(a)(1).

## ISSUES PRESENTED IN REPLY

**ISSUE PRESENTED IN REPLY NO. 1:** THE EVIDENCE WAS LEGALLY SUFFICIENT FOR A RATIONAL JURY TO REASONABLY FIND THAT THE APPELLANT (MR. BLACK) WAS "OPERATING" THE MOTOR VEHICLE.

**ISSUE PRESENTED IN REPLY NO. 2:** THE APPELLANT (MR. BLACK) FAILED TO PRESERVE ERROR: (1) HIS UNSWORN AND ORAL MOTION FOR CONTINUANCE PRESERVED NOTHING FOR APPEAL; AND (2) THE APPELLANT DID NOT FILE ANY MOTION FOR NEW TRIAL; OR ALTERNATIVELY, THE APPELLANT COULD NOT ESTABLISH, ON THIS RECORD, THAT THE TRIAL COURT ABUSED ITS DISCRETION.

CAUSE NO. 06-15-00060-CR

IN THE

COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS AT TEXARKANA

_____

JESSE DWAYNE BLACK, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

ON APPEAL FROM THE COUNTY COURT;
LAMAR COUNTY, TEXAS; TRIAL COURT NO. 62549;
HONORABLE M.C. SUPERVILLE, JR., JUDGE

_____

# APPELLEE'S (STATE'S) BRIEF

_____

TO HONORABLE SIXTH COURT OF APPEALS:

COMES NOW, the State of Texas, by and through its Lamar County and District Attorney's Office, files this its Appellee's Brief under Rule 38.2 of the Texas Rules of Appellate Procedure.

Unless otherwise indicated, Jesse Dwayne Black will be referred to as "the appellant" or "Mr. Black." The State of Texas will be referred to as "the State" or "appellee."

## STATEMENT OF FACTS

### Background:  Law Enforcement Dispatched to Accident Scene.

On August 2, 2014 (RR, Vol. 3, pgs. 35, 44), Johnny Bangs, a peace officer with the City of Paris, (officer Bangs) came into contact with Mr. Black.[1]  *See* RR, Vol. 3, pgs. 34-35.  Officer Bangs was dispatched to a motor vehicle accident in the 1400 block of Tudor.  *See* RR, Vol. 3, pgs. 36, 43; State's Exhibit 3.  When officer Bangs came upon the accident, he saw a truck that had left the roadway and struck a tree.  *See* RR, Vol. 3, pgs. 36, 45, 58, 72.

Officer Bangs was the first police officer to arrive, and there were civilians that were there.  *See* RR, Vol. 3, pgs. 52, 86.  In the Texas Peace Officer's Crash Report, officer Bangs wrote, "no witnesses."  *See* RR, Vol. 3, pg. 54.

Officer Cody Flatt with the Paris Police Department (officer Flatt) was also on the night shift from 5:30 to 5:30 on August 2, 2014.  *See* RR, Vol. 3, pgs. 62-63.  Officer Flatt showed up on the scene, and officer Bangs was there, "right in front."  *See* RR, Vol. 3, pg. 64.  *See also* RR, Vol. 3, pgs. 71, 86; State's Exhibit 2.

---

[1] At the time of trial, officer Bangs identified Mr. Black in the courtroom in a "checkered shirt."  *See* RR, Vol. 3, pg. 35.

The vehicle was a maroon Toyota Tundra pickup truck. *See* RR, Vol. 3, pgs. 45, 48, 64. The vehicle had front-end damage. *See* RR, Vol. 3, pgs. 46, 48. It probably wasn't drivable, but nobody tried to drive it. *See* RR, Vol. 3, pg. 48. It was towed away. *See* RR, Vol. 3, pgs. 46, 66. The keys were in the ignition. *See* RR, Vol. 3, pg. 54.

The license plate showed the vehicle registered to Mr. Black. *See* RR, Vol. 3, pg. 48. The car came back as registered to Mr. Black. *See* RR, Vol. 3, pg. 74.

Officer Bangs went to the truck and initially went to the passenger side door. *See* RR, Vol. 3, pg. 55; State's Exhibit 2. Officer Bangs went there because that was the door that was opened, and there was nobody occupying that seat. *See* RR, Vol. 3, pg. 55.

Officer Bangs looked through the passenger side, and he was not in the passenger seat. *See* RR, Vol. 3, pgs. 38, 45. Mr. Black was sitting in the driver seat[2] "slumped over sideways" (RR, Vol. 3, pg. 37), to the right and toward the passenger door. *See* RR, Vol. 3, pg. 52. *See also* RR, Vol. 3, pgs. 38, 72, 167, 171. Officer Flatt saw blood on the passenger-side

---

[2] At the time of trial, officer Bangs initially testified that Mr. Black "was sitting in the passenger seat at the time, kind of slumped over." Later, officer Bangs testified, "if I said passenger, I'm sorry." *See* RR, Vol. 3, pgs. 37, 38. On cross-examination, officer Bangs testified that "Rather than being confused, I believe I misspoke." *See* RR, Vol. 3, pg. 52. *See also* RR, Vol. 3, pg. 84 (officer Flatt's testimony).

floorboard.  *See* RR, Vol. 3, pgs. 88, 94-96.  *See also* RR, Vol. 3, pg. 171.

When the officers first arrived, Mr. Black had the blood shot eyes, and smelled of alcohol.  *See* RR, Vol. 3, pgs. 40, 68.  Officer Bangs attempted to ask him several questions, and he was unable to answer any questions.  *See* RR, Vol. 3, pg. 37.  "[H]e wasn't responsive."  *See* RR, Vol. 3, pg. 39.  *See also* RR, Vol. 3, pg. 73.

Also, officer Flatt started trying to talk to Mr. Black.  *See* RR, Vol. 3, pg. 65.  He was awake and conscious, but he wasn't responding to anything that the officers were trying to say to him.  *See* RR, Vol. 3, pg. 65.  He wasn't talking back or anything.  *See* RR, Vol. 3, pg. 65.

EMS and fire were dispatched.  *See* RR, Vol. 3, pg. 37.  When EMS and fire arrived, he still wasn't talking.  *See* RR, Vol. 3, pg. 66.

Mr. Black "went out the driver door" on a stretcher/gurney, and he went to the hospital by ambulance.  *See* RR, Vol. 3, pgs. 37, 47, 66.  "He was taken to the hospital."  *See* RR, Vol. 3, pg. 39.

Both officers Flatt and Bangs followed the EMS up there.  *See* RR, Vol. 3, pg. 39.  The officers stayed with him until the initial assessment was done and to make sure that he was medically clear.  *See* RR, Vol. 3, pgs. 39, 41.  The officers realized that his condition was not a medical condition; it

was a level of intoxication that had caused him to have the wreck. *See* RR, Vol. 3, pgs. 39-40. "He was passed out from the level of intoxication." *See* RR, Vol. 3, pg. 40.

**Arrival at Paris Regional Medical Center.**

At the Paris Regional Medical Center, Tania Reily, a registered nurse, was working the shift from "Seven AM to Seven PM" (RR, Vol. 3, pg. 101), when the patient (Mr. Black) arrived by Paris EMS. *See* RR, Vol. 3, pg. 102. He arrived on the stretcher and "fully packaged," which meant he was strapped onto the backboard with a C-collar around his neck for protection. *See* RR, Vol. 3, pg. 102.

Mr. Black was noticed as yelling, shouting, and using profanity or obscenities. *See* RR, Vol. 3, pgs. 102-103. *See also* RR, Vol. 3, pg. 107 ("very vulgar and profane"); pg. 125 ("he was kind of beligerent"); State's Exhibit 1. There was a smell of alcohol. *See* RR, Vol. 3, pg. 103.

At the hospital, Mr. Black finally started talking and he was slurring. *See* RR, Vol. 3, pgs. 40, 68. Mr. Black was "very upset" and was cursing at everybody in the room. *See* RR, Vol. 3, pgs. 74, 79. Mr. Black tried to walk; and at one point, he fell. *See* RR, Vol. 4, pg. 40. Officer Flatt had to catch him. *See* RR, Vol. 3, pg. 68.

Van Smith, a phlebotomist, was "at bedside to draw blood." *See* RR, Vol. 3, pgs. 116-117, 132, 133, 150. Mr. Black's blood was taken by the hospital. *See* RR, Vol. 3, pgs. 41-42, 79. Phlebotomist Smith proceeded to label it with the patient's name and then took it down to the lab. *See* RR, Vol. 3, pg. 119. That's their standard procedure (RR, Vol. 3, pgs. 80, 119), for "their medical purposes." *See* RR, Vol. 3, pg. 83. *See also* RR, Vol. 3, pg. 150; State's Exhibit 1 (medical records).

Mary Jane McClay, a medical technologist at Paris Regional Medical Center, ran the laboratory tests on blood, urine and various specimens. *See* RR, Vol. 3, pg. 129. Mary Jane McClay was working on August 2, 2014 and prepared the report on the patient, Mr. Black. *See* RR, Vol. 3, pgs. 129, 131. The result of Mr. Black's ethyl alcohol was 317 milligrams per deciliter. *See* RR, Vol. 3, pgs. 133, 135, 144, 152. Gerald Fulton, a medical technologist (RR, Vol. 3, pgs. 140-141), converted that number into blood-alcohol concentration for whole blood at .264. *See* RR, Vol. 3, pgs. 144-145.

Rayna Sneed (Sneed) was a medical lab tech at Paris Regional Medical Center. *See* RR, Vol. 3, pgs. 155-156. Sneed did a urine test on Mr. Black, who tested positive for cocaine. *See* RR, Vol. 3, pgs. 157-158.

The primary impression by the ER physician was, "acute alcohol intoxication." *See* RR, Vol. 3, pgs. 113, 158. *See also* State's Exhibit 1.

Once he was cleared by the hospital, the officers placed Mr. Black under arrest for driving while intoxicated. *See* RR, Vol. 3, pgs. 40, 66, 73, 81. Officer Flatt took him from the hospital to the jail. *See* RR, Vol. 3, pgs. 40, 42, 51, 67-68, 81.

When they got back to the jail, Officer Flatt read the DIC 24, which was park of the DWI paperwork that must be filed to have a DWI arrest. *See* RR, Vol. 3, pg. 82. Officer Flatt asked consent for a sample, and Mr. Black refused. *See* RR, Vol. 3, pg. 83; State's Exhibit 3. Officer Flatt did not obtain a search warrant. *See* RR, Vol. 3, pgs. 91-92.

**Procedural Background.**

On April 7, 2015, the trial court proceeded with the voir dire examination of potential jurors with the hearing of evidence during the week of April 15th. *See* RR, Vol. 2, pgs. 5, 58. On April 7th, the trial court impaneled its petit jury. *See* RR, Vol. 2, pgs. 58-59.

On April 9th, defense counsel for Mr. Black filed an application for subpoena for three witnesses. *See* CR, pg. 34. As a result, the county clerk issued subpoenas on April 10, 2015 (CR, pgs. 35-37), including a subpoena

for Gregory Don Winkler (Winkler).  *See* CR, pg. 37.

On April 15th, the trial court granted the motion to invoke the Rule, and the witnesses were sworn.  *See* RR, Vol. 3, pg. 8.  Afterwards, Mr. Black moved the trial court for a continuance, as follows:

> MR. COYLE:  Yes, Your Honor.  I have subpoenaed three witnesses.  Ms. Ellis has appeared.  There are two others who have not appeared.  One of them is Mark Mr. Black.  He was one of the first people at the scene.  He has been served with a subpoena.  The other one is a man named Gregory Don Winkler -- W-i-n-k-l-e-r.

> It is my belief that Mr. Gregory Don Winkler was the actual driver of this vehicle when it rain into the ditch.  I have had an investigator looking for Gregory Don Winkler.  I had a subpoena issued for him.  I had an investigator looking for him. We have been unable to locate him.

> He has a brother named Danny Winkler who reportedly is with him or with whom this Gregory Don is with a lot, stays with Danny Winkler.

> I am trying to find Gregory Don Winkler because I think he is an essential witness to the facts of this case.  Because I cannot find him, have not been able to find him as of now, I move that this trial be continued to give me sufficient time to find Gregory Don Winkler, as I said we believe he was actually the driver of the car.

> THE COURT:  So, are you talking about like until tomorrow or Friday or what?

> MR. COYLE:  I would ask for a reasonable time.  I would think that 10 days would be sufficient.

-8-

THE COURT:  Okay.  He's asking for 10 days.

MR. WALKER:   Judge, Mr. Coyle was appointed, I believe, on February 12th, two months ago, ample time to run down witnesses if they exist.  I would also bring to your attention this is the first time that I've ever heard of Gregory Don Winkler.  And if he actually did drive this car then he committed a crime, and I could have used some of our resources to try and track him down, and we wouldn't be here if the Defendant is actually innocent and didn't drive this car while intoxicated.

So, it doesn't seem right to continue it on the morning of trial when he's had all of this time to look for this guy.

MR. COYLE:   Your Honor, I learned of Gregory Don Winkler on the day of the pre-trial -- actually on the day of jury selection is when I learned it.  The court is well aware that these misdemeanor cases typically don't get a lot of investigation prior to jury selection or pre-trial because there aren't resources to do so.

I filed a Motion with the Court asking for approval for my investigator fees.  That Motion was granted and since then my investigator has been beating the bushes looking for Gregory Don Winkler.

And with respect to Mr. Walker's representation that I should notify the State, I have no obligation to telegraph my defense for the State and typically will not do so.  I don't even like to do it right now, but I am forced to do so.

I am not asking the Court for sufficient time to allow us to develop a defense.  We believe there is strong evidence that my client was not in fact driving this truck.  There is no evidence actually that he was driving it.  No one saw him driving it including the police officer witnesses who will testify.

-9-

There are no witnesses to my knowledge who observed my client driving this truck.

He was found in the car after the truck had crashed, and it is our belief that Gregory Don Winkler was actually driving the truck. And when the truck crashed, Mr. Winkler fled.

THE COURT: Okay.

MR. WALKER: I will also represent to the Court that if we do go ahead this morning with the trial I will ask our investigator Chris Brooks to look for a few hours if the Court has time.

We can also ask the Paris police if they have any leads regarding Gregory Don Winkler that he could be run down. I don't know how long it will take to get through my case before this guy will be called.

MR. COYLE: The trouble with that, Judge, is I need --

THE COURT: How long do we wait before the Court --

MR. COYLE: As I said, we are asking the Court for 10 days.

THE COURT: I'm going to deny your Motion at this time.

*See* RR, Vol. 3, pgs. 11-14.

Later, Mr. Black made "a record with respect to [his] Motion" and called Raymond J. Ball (investigator Ball) as a witness. *See* RR, Vol. 3, pg. 21. Following the testimony, the trial court ruled, "You have your objection for the record. Your motion is denied, but keep looking." *See* RR, Vol. 3,

pg. 24.

**Jury Trial:  Guilt-Innocence Phase.**

The trial court then provided its instructions to the jury.  *See* RR, Vol. 3, pgs. 25-28.  The State presented the information, and Mr. Black entered a plea of "not guilty."  *See* RR, Vol. 3, pgs. 28-29.

Following opening arguments (RR, Vol. 3, pgs. 30-33), the State called officer Bangs as its first testifying witness.  *See* RR, Vol. 3, pg. 34.  After officer Bangs' testimony and several other witnesses, the State rested its case-in-chief.  *See* RR, Vol. 3, pg. 160.  The defense moved for a directed verdict (RR, Vol. 3, pgs. 161-162), which the trial court denied.  *See* RR, Vol. 3, pg. 163.

The defense presented his case-in-chief with several witnesses, and Mr. Black testified on his own behalf.  *See* RR, Vol. 3, pgs. 163-217.  *See also* RR, Vol. 3, pg. 237.  After his testimony, Mr. Black renewed his motion for continuance, which the trial court denied.  *See* RR, Vol. 3, pgs. 218, 221.

Subsequently, the trial court ruled that the defense could put on the investigator "to explain what the investigator has done, when he has done, and what he's done."  *See* RR, Vol. 3, pg. 226.  Investigator Ball testified.

*See* RR, Vol. 3, pgs. 229-231.  Following his testimony, the defense rested. *See* RR, Vol. 3, pg. 231.  Both sides then rested and closed.  *See* RR, Vol. 3, pg. 231.

The trial court prepared its jury charge over no objections.  *See* RR, Vol. 3, pgs. 234, 239.  The trial court then read its charge to the jury.  *See* RR, Vol. 3, pg. 239.  The jury heard closing arguments.  *See* RR, Vol. 3, pgs. 240-255.

After closing arguments, the jury retired to begin its deliberations. *See* RR, Vol. 3, pg. 256.  Upon the conclusion of its deliberations, the jury reached a verdict.  *See* RR, Vol. 3, pg. 257.

By its verdict, the jury found Mr. Black guilty of the offense of driving while intoxicated, as charged in the information.  *See* RR, Vol. 3, pg. 257; CR, pg. 46.  Also, by its verdict, the jury found that Mr. Black committed the offense when an analysis of a specimen of the Defendant's blood showed an alcohol concentration level of 0.15 or more at the time the analysis was performed.  *See* RR, Vol. 3, pgs. 257-258; CR, pg. 47.

The trial court accepted the jury's verdict.  *See* RR, Vol. 3, pg. 258. The trial court then dismissed the jury.  *See* RR, Vol. 3, pg. 259.

**Jury Trial:  Punishment Phase.**

On April 17, 2015, the trial court reconvened cause number 62549 for a punishment hearing, and "the [d]efense has decided to go to the Court for punishment."  *See* RR, Vol. 4, pg. 4.  The State did not intend to call any witnesses; instead, the State relied on "all the evidence" along with the "prior criminal record, the felony and misdemeanor theft convictions."  *See* RR, Vol. 4, pg. 5.  The State rested.  *See* RR, Vol. 4, pg. 5.

The defense was "also not going to call any witnesses.  Mr. Black testified."  *See* RR, Vol. 4, pg. 5.  The defense rested and closed.  *See* RR, Vol. 4, pg. 6.  The State then rested and closed.  *See* RR, Vol. 4, pgs. 6-7.

Following closing arguments (RR, Vol. 4, pgs. 7-12), the trial judge sentenced Mr. Black to 270 days in the Lamar County jail and assessed court costs to be laid out with the jail sentence.  *See* RR, Vol. 4, pg. 12.  The trial judge also allowed work release if it was verified by the Sheriff's Department.  *See* RR, Vol. 4, pg. 12.

Through defense counsel, Mr. Black was going to file a notice of appeal.  *See* RR, Vol. 4, pg. 12.  Subsequently, the trial court adjourned the trial proceedings.  *See* RR, Vol. 4, pg. 20.

On April 17, 2015, the trial court signed its judgment and sentence.

*See* CR, pgs. 48-49.  On the same day, the trial court signed its certification of defendant's right of appeal (Supp. CR, pg. 4), and Mr. Black timely filed his notice of appeal.  *See* Supp. CR, pg. 3.

**Background in this Court of Appeals.**

On or about April 24, 2015, Mr. Black filed his notice of appeal in this Court; and upon filing, this Court assigned cause number 06-15-00060-CR.  On or about June 9th, the county clerk of Lamar County filed the Clerk's Record.  The official court reporter filed the Reporter's Record on or about July 28, 2015.

On August 27, 2015, the appellant (Mr. Black) filed his brief.  The State will be filing its brief on September 28, 2015.

## SUMMARY OF THE ARGUMENT

In summary, the appellant's (Mr. Black's) two (2) issues/points of error should be overruled for the following reasons:  (1) the evidence was legally sufficient for a rational jury to reasonably find that Mr. Black was "operating" the motor vehicle; and (2) the appellant (Mr. Black) failed to preserve error by (a) his unsworn and oral motion for continuance and (b) his failure to file any motion for new trial; or alternatively, the appellant could not establish, on this record, that the trial court abused its discretion.

-14-

Because the appellant's issues/points of error should be overruled, the trial court's final judgment of conviction should be affirmed in all respects.

## ARGUMENT AND AUTHORITIES

**ISSUE PRESENTED IN REPLY NO. 1: THE EVIDENCE WAS LEGALLY SUFFICIENT FOR A RATIONAL JURY TO REASONABLY FIND THAT THE APPELLANT (MR. BLACK) WAS "OPERATING" THE MOTOR VEHICLE.**

A. **Standard of Review: Legal Sufficiency of the Evidence.**

With his first issue/point of error, Mr. Black alleged that the evidence was insufficient to support the jury's verdict that he was the driver of the truck. *See* Appellant's Brief, pgs. 4, 10. *See also* Appellant's Brief, pgs. 10-12.

In evaluating legal sufficiency, this Court should review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of theft beyond a reasonable doubt. *See Taylor v. State*, 440 S.W.3d 854, 856 (Tex. App.--Texarkana 2013), *aff'd*, 450 S.W.3d 528 (Tex. Crim. App. 2014) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Under *Jackson*, when reviewing the sufficiency of the evidence, this Court views all the evidence in the light most favorable to the verdict to

determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 318-19.

This Court examines legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *See Taylor*, 440 S.W.3d at 856; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318-19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); *Vega v. State*, 267 S.W.3d 912, 916 (Tex. Crim. App. 2008). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *See Priego v. State*, 457 S.W.3d 565, 568-69 (Tex.

App.--Texarkana 2015, pet. ref'd).

Under the hypothetically correct jury charge, Mr. Black committed the misdemeanor offense of DWI if (1) he (2) operated (3) a motor vehicle (4) in a public place (5) while intoxicated.  *See* Tex. Penal Code Ann. § 49.04 (West Supp. 2014).

B.    **In Looking to the Totality of the Circumstances, Legally Sufficient Evidence Supported the Conviction.**

In *Priego*, this Court assessed the sufficiency of the evidence by looking to the totality of the circumstances, as follows:

> The term "operating," as utilized in the Penal Code, is not defined.  *See* Tex. Penal Code Ann. § 49.04(a); *see also Kirsch v. State*, 357 S.W.3d 645, 651 (Tex. Crim. App. 2012).   In assessing the sufficiency of the evidence to prove that a defendant was "operating" a vehicle as contemplated by the statute, we look to the totality of the circumstances.  *Kirsch*, 357 S.W.3d at 651.  Those circumstances must "demonstrate that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use."  *Id*. At 650-51 (quoting *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995)).

> "Under this standard, 'operating' a motor vehicle is interpreted very broadly."  *Smith v. State*, 401 S.W.3d 915, 919 (Tex. App.--Texarkana 2013, pet. ref'd) (citing *Dornbusch v. State*, 262 S.W.3d 432, 436 (Tex. App.--Fort Worth 2008, no pet.)).  "[W]hile driving does involve operation, operation does not necessarily involve driving."  *Denton v. State*, 911 S.W.2d 388, 389 (Tex. Crim. App. 1995).  "Because operating a motor vehicle is defined so broadly, any action that is more than mere preparation toward operating the vehicle would necessarily be

an 'action to affect the functioning of [a] vehicle in a manner that would enable the vehicle's use.'" *Smith*, 401 S.W.3d at 919 (quoting *Strong v. State*, 87 S.W.3d 206, 215 (Tex. App.-- Dallas 2002, pet. ref'd); *abrogated on other grounds by Pfeiffer v. State*, 363 S.W.3d 594 (Tex. Crim. App. 2012). Accordingly, Texas court have upheld DWI convictions in cases where the intoxicated person was not actually driving the vehicle. . . .

*See Priego*, 457 S.W.3d at 569 (references to some authorities omitted).

In applying the *Priego* rationale to the present case, the evidence was legally sufficient for a rational jury to reasonably find that Mr. Black was "operating" the motor vehicle that had left the roadway and struck a tree. *See id*. When officer Bangs looked through the passenger of the vehicle, Black was sitting in the driver seat "slumped over sideways" to the right and toward the passenger door. *See* RR, Vol. 3, pgs. 37-38, 52. Mr. Black "went out the driver door" on a stretcher/gurney. *See* RR, Vol. 3, pgs. 37, 47, 66. The keys were in the ignition. *See* RR, Vol. 3, pg. 54. The license plate showed the vehicle registered to Mr. Black. *See* RR, Vol. 3, pgs. 48, 74. Given the totality of the circumstances, the jury could reasonably find that Mr. Black was "operating" the motor vehicle. *See Priego*, 457 S.W.3d at 569.

Although Mr. Black testified that he was not "operating" the vehicle, the jury could best judge Mr. Black's credibility, given his criminal history;

and it was for the jury, as the trier of fact, to judge the credibility of the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony. *See Brooks*, 323 S.W.3d at 921, n. 48. Because the jury could resolve any conflicts or inconsistencies in the testimony and the evidence was legally sufficient, this Court should not substitute its judgment for that of the jury. Accordingly, the appellant's first issue/point of error should be overruled.

**ISSUE PRESENTED IN REPLY NO. 2: THE APPELLANT (MR. BLACK) FAILED TO PRESERVE ERROR: (1) HIS UNSWORN AND ORAL MOTION FOR CONTINUANCE PRESERVED NOTHING FOR APPEAL; AND (2) THE APPELLANT DID NOT FILE ANY MOTION FOR NEW TRIAL; OR ALTERNATIVELY, THE APPELLANT COULD NOT ESTABLISH, ON THIS RECORD, THAT THE TRIAL COURT ABUSED ITS DISCRETION.**

A. **Preservation of Error: Mr. Black's Second Issue/Point of Error Should Be Overruled.**

With his second issue, Mr. Black contended that the trial court erred in denying the motion for continuance to locate a key witness for the defense. *See* Appellant's Brief, pgs. 4, 14. But, Mr. Black also conceded in his brief that "[t]o be sure, the record in this case [did] not contain a written document styled 'Motion for Continuance'." *See* Appellant's Brief, pg. 16.

1. **Mr. Black's Unsworn and Oral Motion for Continuance Preserved Nothing for Appeal.**

Given that the motion in question was oral and unsworn, and because no "due process exception" exists to the written-and-sworn requirement, Mr. Black's second issue/point of error was not properly preserved for appeal. *See Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012); *Anderson v. State*, 301 S.W.3d 276, 279-80 (Tex. Crim. App. 2009); Tex. Code Crim. Proc. Ann. art. 29.03 (West 2009) (trial court may grant continuance only upon written motion, sworn to by State or defendant, setting forth sufficient cause). A criminal action may be continued on the written motion of a party for sufficient cause shown. *See Harrison v. State*, 187 S.W.3d 429, 434 (Tex. Crim. App. 2005) (citing Tex. Code Crim. Proc. Ann. art. 29.03). Article 29.03 of the Texas Code of Criminal Procedure provided that "[a] criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown; which cause shall be fully set forth in the motion. A continuance may be only for as long as is necessary." *See* Tex. Code Crim. Proc. Ann. art. 29.03 (West 2009).

In *Blackshear*, the Texas Court of Criminal Appeals held that article 29.03 has been interpreted to mean that "if a party makes an unsworn oral motion for a continuance and the trial judge denies it, the party forfeits the

right to complain about the judge's ruling on appeal." *See Blackshear*, 385 S.W.3d at 591 (citing *Anderson v. State*, 301 S.W.3d at 279). In *Blackshear*, the Court held that "[u]ltimately, an unsworn oral motion preserve[d] nothing for appeal." *See Blackshear*, 385 S.W.3d at 591.

Here, as in *Blackshear*, Mr. Black's unsworn and oral motion preserved nothing for appeal. *See id*. Therefore, this Court should follow *Blackshear*, and the appellant's second issue/point of error should be overruled in its entirety.

2. **Mr. Black Did Not File any Motion for New Trial.**

Further, the appellant (Mr. Black) did not file any motion for new trial, so he could not establish, on this record, that the trial court abused its discretion. *See Taylor v. State*, 612 S.W.2d 566 (Tex. Crim. App. [Panel Op.] 1981). In *Taylor*, the Court held that "[t]he only means of preserving error in the overruling of a motion for continuance due to an absent witness is a motion for new trial." *See id* at 569. *See also Outland v. State*, 810 S.W.2d 474, 475 (Tex. App.--Fort Worth 1991, pet. ref'd) (the appellant's motion for new trial did not raise the issue of the trial court's denial of his motion for continuance to procure the testimony of Nolan Woods, whose testimony he claimed would be exculpatory; therefore, appellant failed to

preserve error with respect to the denial of his motion for continuance.).

In the present case, the Clerk's Record did not contain a motion for new trial. *See generally* Clerk's Record. Therefore, the appellant's second issue/point of error should be overruled in its entirety.

B. **Alternatively, The Trial Court Did Not Abuse its Discretion.**

The granting or denial of a motion for continuance is vested in the sound discretion of the trial court, and reversal of a judgment is justified only when it is shown the trial court has abused its discretion." *See Hernandez v. State*, 643 S.W.2d 397, 399 (Tex. Crim. App. 1982). Even if the appellant's (Mr. Black's) oral motion for continuance met the requirements of article 29.06 based upon absence of a witness, *see* Tex. Code Crim. Proc. Ann. art. 29.06 (West 2009), the trial court still denied the motion in the exercise of its discretion. *See Hernandez*, 643 S.W.2d at 399.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the State of Texas prays that upon final submission of the above-styled and numbered cause without oral argument, this Court affirm the trial court's final judgment of conviction in all respects; adjudge court costs against the appellant; and for such other and further relief, both at law and in equity, to which it may be justly and

legally entitled.

Respectfully submitted,

Gary D. Young
Lamar County & District Attorney
Lamar County Courthouse
119 North Main
Paris, Texas   75460
(903) 737-2470
(903) 737-2455 (fax)

By:_____
     Gary D. Young, County Attorney
     SBN# 00785298
     gyoung@co.lamar.tx.us

**ATTORNEYS FOR THE STATE OF TEXAS**

**<u>CERTIFICATE OF COMPLIANCE</u>**

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, the "Appellee's (State's) Brief" was a computer-generated document and contained 6171 words--not including the Appendix, if any.  The undersigned attorney certified that he relied on the word count of the computer program, which was used to prepare this document.

_____
GARY D. YOUNG
gyoung@co.lamar.tx.us

-23-

**CERTIFICATE OF SERVICE**

This is to certify that in accordance with Tex. R. App. P. 9.5, a true copy of the Appellee's (State's) Brief has been served on the 28th day of September, 2015 upon the following:

Don Biard
McLaughlin, Hutchison & Biard
38 First Northwest
Paris, TX   75460

_____
GARY D. YOUNG
gyoung@co.lamar.tx.us